**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:22-CV-80795-AMC

JUDY PARK, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS, LLC d/b/a XFINITY,

    Defendant.

**DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC d/b/a XFINITY'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  PLAINTIFF'S FACTUAL ALLEGATIONS .................................................................... 2

III. LEGAL STANDARD ....................................................................................................... 2

IV.  ARGUMENT .................................................................................................................... 3

    A.  Plaintiff Fails to State a TCPA Claim Because She Does Not Allege That Comcast Used an Automatic Telephone Dialing System. ...................................... 3

        1.  Plaintiff must allege that Comcast used a random or sequential number generator to send text messages to her cell phone. ..................................... 3

        2.  Plaintiff fails to allege that Comcast used a random or sequential number generator to send text messages to her cell phone. ..................................... 5

    B.  Plaintiff's FCCPA Claim Fails Because She Does Not Allege That Comcast Knew That Her Debt Was Not Legitimate. ............................................................. 8

V.   CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Wells Fargo Bank, Nat'l Ass'n*,
2021 U.S. Dist. LEXIS 254340 (D. Or. Dec. 10, 2021) ....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Barnett v. First Nat'l Bank of Omaha*,
2022 U.S. Dist. LEXIS 37563 (W.D. Ky. Mar. 3, 2022) ....................4

*Barry v. Ally Fin., Inc.*,
2021 U.S. Dist. LEXIS 129573 (E.D. Mich. July 13, 2021) ....................4, 6, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................2, 5

*Buja v. Capital*,
2016 U.S. Dist. LEXIS 201576 (S.D. Fla. Aug. 23, 2016) ....................3

*Coheley v. Lender Legal Servs., LLC*,
2019 U.S. Dist. LEXIS 204366 (M.D. Fla. Nov. 25, 2019) ....................9, 10

*Erickson v. Gen. Elec. Co.*,
2011 U.S. Dist. LEXIS 160761 (M.D. Fla. June 24, 2011) ....................9

*Evans v. Ocwen Loan Servicing, LLC*,
2021 U.S. Dist. LEXIS 203427 (S.D. Fla. Oct. 21, 2021) .................... *passim*

*Facebook, Inc. v. Duguid*,
1141 S. Ct. 1163 (2021) .................... *passim*

*Franco v. Alorica Inc.*,
2021 U.S. Dist. LEXIS 164438 (C.D. Cal. July 27, 2021) ....................6

*Jovanovic v. SRP Invs. LLC*,
2021 U.S. Dist. LEXIS 175631 (D. Ariz. Sep. 14, 2021) ....................6

*McEwen v. Nat'l Rifle Ass'n of Am.*,
2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021) ....................5

*Panzarella v. Navient Sols., Inc.*,
37 F.4th 867 (3d Cir. 2022) ....................4

*Pewzner v. Med. Recovery Specialists, LLC*,
    2012 U.S. Dist. LEXIS 196848 (S.D. Fla. Dec. 4, 2012) ..........................................................8

*Reese v. JPMorgan Chase & Co.*,
    686 F. Supp. 2d 1291 (S.D. Fla. 2009) ..................................................................................9

*Ruiz v. Experian Info. Sols., Inc.*,
    2017 U.S. Dist. LEXIS 57501 (S.D. Fla. Apr. 14, 2017) ....................................................9, 10

**Statutes**

47 U.S.C. § 227(a)(1)(A) ...................................................................................................................4

47 U.S.C. § 227(a)(1)(A)–(B) ...........................................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................................................3

47 U.S.C. § 227(b)(A) .......................................................................................................................4

Fla. Stat. § 559.72(9) .....................................................................................................................8, 9

**Other Authorities**

47 C.F.R. § 64.1200 .........................................................................................................................3

47 C.F.R. § 64.1200(a)(1)(iii) ..........................................................................................................3

Federal Rule of Civil Procedure 8 ...................................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................................................................1, 2

iii

Defendant Comcast Cable Communications, LLC d/b/a Xfinity ("Comcast"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Amended Class Action Complaint (the "Amended Complaint") filed by Plaintiff Judy Park ("Plaintiff") for the reasons set forth in the following incorporated Memorandum of Law.

## MEMORANDUM OF LAW

**I.     INTRODUCTION**

Plaintiff's Amended Complaint should be dismissed with prejudice because she fails to state a claim upon which relief can be granted. Plaintiff asserts a claim under the Telephone Consumer Protection Act ("TCPA") and a claim under the Florida Consumer Collection Practices Act ("FCCPA"). Both claims arise from Plaintiff's allegation that Comcast sent a series of text messages to her phone concerning a past-due balance on her account, even though Plaintiff was never a Comcast customer. Both claims fail as a matter of law.

*First*, Plaintiff's TCPA claim fails because she does not plausibly allege that Comcast sent her text messages using an "automatic telephone dialing system" ("ATDS"), which is an essential element of her TCPA claim. Specifically, Plaintiff fails to allege that Comcast's system stores or produces telephone numbers using a random or sequential number generator—let alone that Comcast used that functionality to contact her, as the law requires. In fact, Plaintiff has pleaded herself out of court by alleging that Comcast sent her multiple, *targeted* (albeit misdirected) *debt-collection text messages*. On similar facts, Judge Rosenberg recently dismissed a TCPA claim filed by Plaintiff's counsel on essentially the same flawed theory—and this Court should do the same. *See Evans v. Ocwen Loan Servicing, LLC*, 2021 U.S. Dist. LEXIS 203427, at *10 (S.D. Fla. Oct. 21, 2021) ("It is implausible to suggest that the Plaintiffs were dialed using a random or sequential number generator, particularly when the Plaintiffs concede in their complaint that the Defendant, a loan servicer, called them to collect upon a debt.").

1

*Second*, Plaintiff's FCCPA claim fails because Plaintiff does not allege that Comcast actually knew that she in fact did not owe any money to Comcast.

Because Plaintiff fails to state a cognizable claim under either statute, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

In her Amended Complaint, Plaintiff alleges that she is the "owner, regular user and subscriber of wireless number (904) 431-9677." Amend. Compl. ¶ 27. She alleges that she "has never had an account" with Comcast and never agreed to receive text messages from Comcast. *Id.* ¶¶ 28, 37. She alleges further that Comcast sent a text message to her informing her that a "past due balance was owed" on her Comcast account and that she should respond "STOP" to request that Comcast "cease sending further messages." *Id.* ¶ 29. Plaintiff alleges that she replied "STOP," and that Comcast "acknowledg[ed] receipt of [her] request to be removed from the text messaging list." *Id.* ¶ 30. She alleges that Comcast sent more than ten additional text messages after that point, which annoyed her and disturbed her privacy. *Id.* ¶¶ 31–32.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotation omitted). Under this standard, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation omitted). That is, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

IV.     **ARGUMENT**

The Court should dismiss Plaintiff's Amended Complaint because Plaintiff fails to plausibly plead claims for relief under the TCPA or the FCCPA.

> **A.     Plaintiff Fails to State a TCPA Claim Because She Does Not Allege That Comcast Used an Automatic Telephone Dialing System.**

The Court should dismiss Plaintiff's TCPA claim because she fails to plausibly allege that Comcast used an ATDS to send text messages to her cell phone. Use of an ATDS is an essential element of Plaintiff's TCPA claim. *See* Amend. Compl. ¶ 60; 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).[1] The TCPA defines ATDS as "equipment which has the capacity (A) to store or produce numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)–(B) (emphasis added).

> **1.     Plaintiff must allege that Comcast used a random or sequential number generator to send text messages to her cell phone.**

Plaintiff asserts that Comcast's dialing system is an ATDS because, based on the system's alleged technology, "[it] has the requisite *capacity* to perform the statutory functions of an ATDS." Amend. Compl. ¶ 35 (emphasis in original). But the law is clear that mere "capacity" is not enough. To qualify as an ATDS, the equipment in question must actually *use* a random or sequential number generator. As the U.S. Supreme Court has explained, "Congress defined an [ATDS] in terms of what it must do ('store or produce telephone numbers to be called') and how it must do it ('using a random or sequential number generator')." *Facebook, Inc. v. Duguid*, 1141 S. Ct. 1163, 1169 (2021) (quoting 47 U.S.C. § 227(a)(1)(A)–(B)). Thus, "Congress' definition of an [ATDS] requires that *in all cases*, whether storing or producing numbers to be called, the

---

[1] The TCPA's implementing regulations are codified at 47 C.F.R. § 64.1200. *See Buja v. Capital*, 2016 U.S. Dist. LEXIS 201576, at *7 (S.D. Fla. Aug. 23, 2016). There is no relevant distinction here between the statute and the regulations, as both define ATDS in the same way.

3

equipment in question must *use* a random or sequential number generator." *Id.* at 1170 (emphases added); *see also Evans*, 2021 U.S. Dist. LEXIS 203427, at *6 ("[O]nly a machine that utilizes a random or sequential number generator and places a call using the same can qualify as an autodialer."). Put differently, if the equipment in question does not actually generate phone numbers randomly or sequentially, it is not an ATDS. *Facebook*, 1141 S. Ct. at 1171 (concluding that the ATDS "definition excludes equipment that does not 'us[e] a random or sequential number generator'") (quoting 47 U.S.C. § 227(a)(1)(A)).

Following *Facebook*, courts—including within this district—have repeatedly held that "capacity alone is not enough to establish liability under the TCPA." *Barnett v. First Nat'l Bank of Omaha*, 2022 U.S. Dist. LEXIS 37563, at *12 (W.D. Ky. Mar. 3, 2022); *Evans*, 2021 U.S. Dist. LEXIS 203427, at *5–12; *Barry v. Ally Fin., Inc.*, 2021 U.S. Dist. LEXIS 129573, at *9–12 (E.D. Mich. July 13, 2021). Instead, liability attaches when a person "uses a random or sequential number generator to contact customers, not simply because [the equipment at issue] has the potential to [produce or] store telephone numbers using a random or sequential number generator." *Barnett*, 2022 U.S. Dist. LEXIS 37563, at *12; *see also Barry*, 2021 U.S. Dist. LEXIS 129573, at *10 ("The TCPA prohibits the unlawful 'use' of an ATDS to 'make any call,' not simply the existence of such systems.") (quoting 47 U.S.C. § 227(b)(A)).[2]

Accordingly, to state a TCPA claim, Plaintiff must allege that Comcast used a random or

---

[2] In one recent outlier decision, the court held that mere capacity *is* enough for a system to constitute an ATDS. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 876 (3d Cir. 2022) ("[W]hether 'equipment' qualifies as an ATDS turns on that equipment's 'capacity' to employ a random or sequential number generator to store or produce telephone numbers, not its actual use of a such a generator."). But that court reached the same result as the majority of cases by holding that a caller does not violate the TCPA unless it actually "employ[s] . . . an ATDS's capacity to use a random or sequential number generator to produce [or store] telephone numbers to be dialed . . . ." *Id.* at 881.

sequential number generator to (1) store or produce her phone number, and (2) dial her phone number. *See Evans*, 2021 U.S. Dist. LEXIS 203427, at *5–12 (dismissing TCPA claim because the plaintiffs did not and could not "plausibly allege that their phone numbers were dialed at random" or in sequence); *McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 U.S. Dist. LEXIS 72133, at *19 (D. Me. Apr. 14, 2021) ("After the [*Facebook*] opinion, the ATDS portion of the claim requires an allegation that [the defendant] used a random or sequential number generator to place a call to [the plaintiff's] cellphone, not merely a claim that its dialing system has that capability.").

### 2. Plaintiff fails to allege that Comcast used a random or sequential number generator to send text messages to her cell phone.

Plaintiff does not allege that Comcast's equipment actually generates numbers randomly or sequentially and then dials them—let alone that it generated and dialed *her number* in that fashion. Instead, Plaintiff's sole allegation relating to random and sequential number generation is as follows:

> The ATDS used by DEFENDANT to send the offending debt collection text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. Specifically, the dialing system consists of software and hardware equipment used in tandem, including a server component which has the built-in function to generate random and/or sequential number tables and automatically dial the numbers populated within those tables. It therefore has the requisite *capacity* to perform the statutory functions of an ATDS.

Amend. Compl. ¶ 35 (emphasis in original). The first sentence of Paragraph 35 is merely a recitation of the TCPA elements—those allegations are entitled to no deference. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). The second sentence of Paragraph 35 is meaningless technobabble that adds essentially no "further factual enhancement," as Federal Rule of Civil Procedure 8 requires. *Id.* at 557. But even accepting those conclusory allegations as true, Plaintiff relies solely on a theory of "capacity"; she does not allege that Comcast *used* a random or sequential number generator in connection with its

5

text messages to her.

Indeed, Plaintiff *cannot* plausibly allege that Comcast texted her randomly or sequentially. Elsewhere in the Amended Complaint, Plaintiff alleges that Comcast texted her "for the purpose of collecting . . . past due debts." Amend. Compl. ¶ 39. As many courts have held—including a recent decision in this district—Plaintiff cannot plausibly allege that Comcast used a random or sequential number generator to contact her for debt-collection purposes. *See Evans*, 2021 U.S. Dist. LEXIS 203427, at *10 ("It is implausible to suggest that the plaintiffs were dialed using a random or sequential number generator, particularly when the plaintiffs concede in their complaint that the Defendant, a loan servicer, called them to collect upon a debt."); *Franco v. Alorica Inc.*, 2021 U.S. Dist. LEXIS 164438, at *8 (C.D. Cal. July 27, 2021) ("It would be wildly implausible for Defendant to randomly or sequentially generate phone numbers in the hopes of reaching the [p]laintiff-debtor."); *Jovanovic v. SRP Invs. LLC*, 2021 U.S. Dist. LEXIS 175631, at *9 (D. Ariz. Sep. 14, 2021) ("Targeted messages weigh against an inference that ATDS was used." (quotation omitted)); *Barry*, 2021 U.S. Dist. LEXIS 129573, at *9 (same). Indeed, if Comcast's equipment "stored or produced Plaintiff's number at random or in sequence," Comcast "would have no way of knowing that it was contacting someone associated with a specific account holder." *Barry*, 2021 U.S. Dist. LEXIS 129573, at *9.

Furthermore, the alleged frequency of the text messages underscores how implausible it would be for Comcast to have contacted Plaintiff using an ATDS. Plaintiff alleges that Comcast has sent "more than ten" text messages to her phone since 2021, characterizing Comcast's conduct as a "campaign." Amend. Compl. ¶¶ 29–31. It is farfetched to suppose that Plaintiff's number was randomly or sequentially generated multiple times during this time period. *See Evans*, 2021 U.S. Dist. LEXIS 203427, at *10 ("If the Defendant placed phone calls at random or in sequence,

the Plaintiffs would not have received multiple phone calls[.]").

In *Evans*—the only case within this circuit to address this issue—the plaintiffs similarly tried to proceed on a "capacity" theory, arguing that "*Facebook* left open the possibility that a machine with the capacity to generate random or sequential phone numbers still qualifies as an [ATDS], even if it did not use the number generation as part of a specific phone call." *Id.* at *9. Judge Rosenberg roundly rejected this argument:

> [T]he text of Facebook is clear: "In sum, Congress' definition of an autodialer requires **that in all cases**, whether storing or producing numbers to be called, the equipment in question **must use a random or sequential number generator**. . . ." [T]he Supreme Court's wording . . . was *in*tentional—not *un*intentional . . . .

*Id.* at *9–10 (quoting *Facebook*, 141 S. Ct. at 1170) (emphases in original).

Judge Rosenberg's interpretation of the TCPA is consistent with Congress's purposes. In *Facebook*, the Supreme Court explained that, in enacting the TCPA, Congress sought to curb the *use* of random or sequential number generation:

> Congress expressly found that the <u>use</u> of random or sequential number generator technology caused unique problems for business, emergency, and cellular lines. Unsurprisingly, then, the autodialer definition Congress employed includes only devices that <u>use</u> such technology, and the autodialer prohibitions target calls made to such lines.

141 S. Ct. at 1172 (emphases added). Indeed, dialing technology that simply exists but goes unused does no harm to individuals like Plaintiff. For instance, in *Barry*, the court explained how permitting a plaintiff to proceed on a "capacity" theory would dramatically expand the TCPA's ambit:

> To accept Plaintiff's argument that she only has to show that the autodialing system used by Defendant has the capacity to use a random or sequential number generator, even though she concedes that such alleged capacity was *not used* to make the calls to her (or to the purported class members), would have the effect of imposing liability on a defendant whenever it has such a system, with admittedly no nexus to the alleged harm to the plaintiff.

2021 U.S. Dist. LEXIS 129573, at *11 (emphasis in original).

7

The Court should reject Plaintiff's invitation to take a "chainsaw to these nuanced problems when Congress meant to use a scalpel." *Facebook*, 141 S. Ct. at 1171. The mere existence of random or sequential number generation technology does not harm anyone. And prohibiting the existence of such functionality would require, and clog courts with, investigations into hypothetical uses. This does not advance the purposes of the TCPA. *See Anderson v. Wells Fargo Bank, Nat'l Ass'n*, 2021 U.S. Dist. LEXIS 254340, at *16 (D. Or. Dec. 10, 2021) (noting the plaintiff had not "explained the harm that results from being telephoned through technology with the *potential* to use a random or sequential number generator" and "how attaching liability to the use of such a system would further the goals of the TCPA" (emphasis in original)).

Because Plaintiff has not alleged—and cannot allege—that Comcast used a random or sequential number generator to contact her, she has failed to allege an essential element of her TCPA claim. Accordingly, Plaintiff's TCPA claim must be dismissed with prejudice. *See, e.g.*, *Evans*, 2021 U.S. Dist. LEXIS 203427, at *5–12 (dismissal with prejudice); *Barry*, 2021 U.S. Dist. LEXIS 129573, at *12 (same).

### B. Plaintiff's FCCPA Claim Fails Because She Does Not Allege That Comcast Knew That Her Debt Was Not Legitimate.

Plaintiff fails to properly plead a claim under Section 559.72(9) of the FCCPA because she fails to allege that Comcast actually knew that Plaintiff did not owe Comcast money.

FCCPA Section 559.72(9) provides that "[i]n collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person *knows* that the debt is not legitimate[.]" Fla. Stat. § 559.72(9) (emphasis added). Case law makes abundantly clear that the statute's "use of the word 'knows' requires *actual knowledge* of the impropriety or overreach of a claim." *Pewzner v. Med. Recovery Specialists, LLC*, 2012 U.S. Dist. LEXIS 196848, at *4 (S.D. Fla. Dec. 4, 2012) (quotation omitted, emphasis added); *see also Erickson v. Gen. Elec. Co.*,

2011 U.S. Dist. LEXIS 160761, at *7 (M.D. Fla. June 24, 2011) ("The use of the term 'knows' in . . . the FCCPA quite naturally implies 'actual knowledge' is required to violate the statute[].").

Thus, "[a] plaintiff bringing a claim under [Section 559.72(9)] must . . . show that the debt collector had actual knowledge that the debt was not legitimate . . . ." *Coheley v. Lender Legal Servs., LLC*, 2019 U.S. Dist. LEXIS 204366 at *13 (M.D. Fla. Nov. 25, 2019) (citing *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1313 (S.D. Fla. 2017)); *see also Ruiz v. Experian Info. Sols., Inc.*, 2017 U.S. Dist. LEXIS 57501, at *6 (S.D. Fla. Apr. 14, 2017) ("Section 559.72(9) requires proof of actual knowledge.") (citing *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 646 (11th Cir. 2015)). Accordingly, at the pleadings stage, Plaintiff must plausibly allege that Comcast knew that Plaintiff's debt was not legitimate.

The Amended Complaint is almost entirely devoid of allegations pertaining to Comcast's alleged knowledge of the legitimacy of Plaintiff's purported debt. Conspicuously, under Count II, Plaintiff does not allege—even in a conclusory fashion—that Comcast acted knowingly. *See* Amend. Compl. ¶¶ 64–69. The only reference to Comcast's knowledge in the Amended Complaint is in Paragraph 6, in which Plaintiff alleges obliquely that "[Comcast's] unlawful acts were and are knowing and willful." *Id.* ¶ 6. "Simply pleading that [a defendant] had knowledge is not enough" to plausibly allege actual knowledge, however. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009). "A pleading must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action' will not survive a motion to dismiss." *Id.* at 1310 (quoting *Twombly*, 550 U.S. at 555).

Because of Plaintiff's failure to allege that Comcast had actual knowledge, let alone allege any facts in support of such an assertion, the Court should dismiss Plaintiff's FCCPA claim. *See, e.g., id.* (dismissing the plaintiff's FCCPA claim, *sua sponte*, because "nowhere in [her] Amended

9

Complaint [did] [the plaintiff] plead facts that [the defendant] had knowledge that it was pursuing a debt that it was not legally entitled to"); *Ruiz*, 2017 U.S. Dist. LEXIS 57501, at *7 (dismissing the plaintiff's FCCPA claim because the plaintiff "failed to allege facts sufficient to demonstrate, even circumstantially, that [the defendant] actually knew that the debt was illegitimate"); *Coheley*, 2019 U.S. Dist. LEXIS 204366, at *13–14 (dismissing the plaintiff's FCCPA claim in part because "apart from legal conclusions, [the plaintiff] [did] not clearly allege that [the] [d]efendants had actual knowledge that the debt was not legitimate").

## V.   CONCLUSION

For the foregoing reasons, Comcast respectfully requests that this Court enter an order dismissing Plaintiff's Amended Complaint in its entirety, with prejudice, and any other relief deemed just and proper.

Dated: September 1, 2022                                          Respectfully submitted,

*/s/ Sean G. Wieber*
**WINSTON & STRAWN LLP**
SEAN G. WIEBER (*pro hac vice*)
Email: SWieber@winston.com
KEVIN P. SIMPSON (*pro hac vice*)
Email: KPSimpson@winston.com
JAMES W. RANDALL (*pro hac vice*)
Email: JWRandall@winston.com
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel.: (312) 558-5600

<div style="text-align:right">

*/s/ Jared R. Kessler*
**WINSTON & STRAWN LLP**
JARED R. KESSLER
Florida Bar No. 0096020
Email: JRKessler@winston.com
ELISA H. BACA
Florida Bar No. 1003009
Email: EBaca@winston.com
Email: ECF_Houston@winston.com
200 S. Biscayne Blvd., Suite 2400
Miami, FL 33131
Tel.: (305) 910-0500

*Counsel for Defendant Comcast Cable*
*Communications, LLC d/b/a Xfinity*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

<div style="text-align:right">

/s/ *Jared R. Kessler*
JARED R. KESSLER

</div>

## SERVICE LIST

**MANEY | GORDON**
David P. Mitchell
Maney & Gordon, P.A.
101 East Kennedy Blvd.,
17th Floor, Suite 1700
Tampa, FL 33602
Tel.: (813) 221-1366
Email: d.mitchell@maneygordon.com

**CONSUMER CORP. LAW ATTORNEYS**
Christopher Hixson
2727 Ulmerton Rd., Suite 270
Clearwater, FL 33762
Tel.: (877) 241-2200
Email: chixson@consumerlawattorneys.com
Email: federalservice@consumerlawattorneys.com

*Attorneys for Plaintiff*